Good morning, Your Honors. May it please the Court, my name is Jonas Lerman and I represent the United States in this government appeal. And I'd like to reserve two minutes for rebuttal. I will watch the clock. Your Honors, the District Court erred here by declining to impose the 10-year mandatory minimum required by 2252b2, this child pornography recidivist enhancement. The Court adopted a reading of the statute that's contrary to its plain meaning, to the statutory context, to congressional intent, and to this Court's binding precedent, particularly Sullivan. And I'll start with Sullivan, if I may, because it controls here and I think it answers a lot of the questions at issue in this case. So in Sullivan, this Court explained what the phrase relating to means in this statute, in 2252b2. This Court also considered how the Supreme Court's Malooly decision affects this statute. And this Court held that relating to has the normal broadening effect and that the usual categorical approach, that was the phrase used by this Court, the usual categorical approach does not apply. So a State prior conviction doesn't need to match element for element any particular Federal crime. Your Honors, there's no basis for distinguishing or limiting Sullivan to only the sexual How about the fact that child pornography and explicit sexual conduct is defined in this chapter of this statute? Doesn't that distinguish it? It seems to me in reading Malooly, it specifically referred to the fact that the drug schedules were specifically identified. And so it seems like that's a distinction that is consistent with Malooly. So a couple points on that, Your Honor. The sexual abuse crimes at issue in Sullivan are also defined in Federal statutes. Now, they're defined in Chapter 109a, not in Chapter 110, as the sexual as the child pornography crimes are. But the Sullivan decision didn't turn on that fact. And, in fact, Sullivan said I'm sorry, go ahead. What I was going to say is Sullivan recognized, just as this Court recognized in Cenarius, that the fact that there are Federal definitions in a different statute is relevant to the relating to inquiry. And so you can look at those other Federal definitions. But because there wasn't an explicit cross-reference, as in Malooly, and because this statute has a different historical background than the historical background that the Supreme Court emphasized in Malooly, it doesn't modify the phrase relating to in the same way as the removal statute at issue in Malooly. And I think another reason that Sullivan can't be limited in this way is that it would lead to a very strange result. So the phrase relating to appears only once in this statute. It appears once, and then it's followed by a long list of generic Federal offenses. So if this Court were to accept the defense's proposition here, it would lead to a strange construction, and I'm not aware of any other statute that's been given that this categorical approach applies to some items in that list, but not to the other items in that list. So put another way, that relating to has a broadening effect on some of the terms in the list, but not on others. What Sullivan makes clear is that the phrase relating to has to be given effect. It can't be stripped of all meaning. And the Court said in Sullivan that accepting the defense's argument would strip it of all meaning and that we have to assume that when Congress used the phrase relating to, it knew what it was doing and it meant to have that broadening effect. That's the holding of Sullivan. And, again, there's not a way to limit that holding or distinguish it, as the defense has argued for. All the tools of statutory interpretation, Your Honors, we would submit point in this direction. You've got the plain meaning of the words relating to. And, again, the presumption that Congress means what it says. And you've also got the fact that when Congress wants to require the sort of strict equivalence that the defense has been arguing for, Congress does that explicitly. So in Cenarius, this Court said, experience indicates that when Congress intends to require a State offense to be congruent to a corresponding Federal offense for sentencing enhancement purposes, it will draft such a requirement expressly. And here, again, Congress just didn't do that. Instead, it used this term relating to, which in Sullivan this Court said shows Congress intended to cast a wider net. Now, the district court here also failed to properly consider congressional intent. And I think that's a key part of the analysis that this Court should really focus on. And the question there is, did Congress, in writing this enhancement, mean to cover repeat offenders like Mr. Reinhart or not? And framed in that way, Your Honors, I think the question becomes pretty clear. Of course Congress did. He's really in the heartland of the type of repeat offender that Congress was trying to cover when it drafted this enhancement. Now, conversely, as we explain in our briefs, if this Court were to adopt the defense's reading of the statute, it would mean that these sorts of child pornography recidivist enhancements would fail to apply in about 40 out of the 50 States. Because 40 out of the 50 States, at least 40, have child pornography definitions that are a little bit broader than the Federal definition. That cannot have been what Congress intended in 1996 when it added this recidivist language to the statute. So on the Mullooly point, since, Judge Murgia, you asked about that, I think it's important to look at what Mullooly actually says and, again, to look at how Sullivan construed Mullooly. So, again, Sullivan already applied Mullooly to this statute and distinguished Mullooly in a couple of ways. First, Mullooly is particular and is specific to the text of the removal statute, and that text is very different from what we have here. Again, the removal statute had that parenthetical, which qualified relating to, which we don't have here. So Sullivan said that there's no limiting parenthetical here, as in Mullooly. The text of 2252b2 does not contain any language analogous to the parenthetical considered in Mullooly. That was what this Court said in Sullivan. Now, the other key part of the Supreme Court's analysis in Mullooly was about the historical background. And, again, that's another point of distinction here. So the Supreme Court emphasized that Congress and the BIA in that statute had long required this sort of direct link. And so in Sullivan, this Court said there's no comparable historical background here. We don't have that sort of direct link required. Mullooly also didn't require an identical match between any Federal generic offense and any statute of prior conviction. And the opinion doesn't actually decide what it means for a State drug crime to relate to a Federally defined controlled substance. What Mullooly says is that the government's position in that case just departed too sharply from the text and from that historical background. So the Kansas law at issue there, which was not even about drugs, it was about paraphernalia of drugs, that the government's reading of that, it just was sort of too far afield, that the Kansas statute pushed the relating-to phrase to the breaking point. But that's not what we have here. And, again, the Sullivan decision says that's not what we have here. We have different text and we have different historical context. Sotomayor, if we read a relating-to as you advocate for, could it result in triggering the mandatory minimum? I'm just trying to figure out the extremes on both sides here. And you make a good point with respect to your position on extreme. But if a prior offense were two teenagers were sexting each other, could that offense result in a relating-to child pornography that would then result in mandatory minimums? I think it potentially could. I mean, the question then would be, you'd look at the — and I see I'm at two minutes, but if I could just finish the answer. Please, go ahead. So you'd look at the elements of the Federal generic offense, and you'd see if the entire State conduct in the State offense categorically relates to the Federal elements would be that the defendant knowingly possessed a visual depiction of a minor engaged in sexually explicit conduct, and the defendant knew it was a minor. So under the hypothetical, Judge Merguez, that you've put out, I mean, I think that potentially could qualify. But it's not the case. For a 10-year mandatory minimum. You know, potentially so. I'm not — That's why I'm just pressing you a little bit on that, because — and I understand why you've made a really good argument as to why, you know, you think that under evaluating current State law, it might eliminate some. But if you — if we go the way that you advocate for, then it would sweep in a lot of conduct that I'm not — I don't — I'm not sure that Congress would have intended that. Well, Your Honor, the defense hasn't pointed to any State child pornography laws that are, you know, much, much, much broader than the Federal child pornography laws. And without having researched the question, I'm not sure that the hypothetical you suggested wouldn't be prosecutable under Federal law. I don't know the answer to that. Okay. But it may well be that that could be a Federal child pornography offense as well. But if the Court's concerned about this sort of — the limits, I mean, one way to address that is what the Eighth Circuit did in the Mayock case. So there they actually said that the Federal definition of child pornography is what applies. They said the 2256 definition is what applies. But that still doesn't limit the meaning of relating to. So you still — the Eighth Circuit said we're going to use that Federal definition of child pornography, but then we're going to look at whether the State law stands in some relation, bears upon, or is associated with that — that Federal definition. And that's the same standard that this Court used in Sullivan. Thank you very much. Good morning. May it please the Court. My name is Ned Smock, and I represent David Reinhardt. I'm going to ask you to just speak up as much as possible. I'm having a little trouble hearing you. Certainly. Sorry. So I think what I'll start with is speaking to the meaning of relating to, because the government suggests that our interpretation is inconsistent with Sullivan and reads the — reads that word out of the statute, and that's not the case. When you look at the language of the statute, you see that the words relating to are broad, and we concede that fact. But it has to be anchored to something. And that anchor is the Federal definition of child pornography. When you look at the language carefully, you see that, in fact, what the language speaks to is relating to a set of types of conduct with a subject, which is child pornography. So the words relating to modify those lists of conduct, but doesn't modify the actual subject itself. So the statute speaks to relating to the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography. State child pornography-related statutes involve a wide range of conduct. What Congress wanted to do here is make clear that the fact that any of these specific terms is not mentioned doesn't limit application of the statute. And you see this, actually, in 311.3. 311.3 applies to developing, duplicating, printing, or exchanging child pornography. None of those terms is one of the types of conduct described in the 2252 statute at hand. But clearly, because of the use of the word relating to, it's swept up. And it would be swept up, but for the fact that the definition of child pornography is overbroad under California law. This interpretation is entirely consistent with Mullooly. Mullooly speaks to relating to the conduct. So that statute applied to transportation, possession, use, any number of different types of conduct involving the drugs that are defined in the statute. What about the government's contention that this restrictive reading and categorical approach that you advocate for will have the effect of essentially eviscerating the mandatory minimum provision because so many states have statutes that will be considered overbroad compared to the Federal generic definition? That's an argument that was raised in Mullooly and rejected by the majority in that case. And if Congress is concerned about that issue, they've amended this statute repeatedly. They can determine conclusively what the definition of child pornography is, how it should be broadened, and which type of content should, in fact, be included. Should it include nudity? I mean, there are any number of different things that they could add to the definition that would bring it within the scope and satisfy the government here. But they haven't done that. And how about Bennett, the Tenth Circuit case? Why should we be persuaded by how the Tenth Circuit reached this issue and found in favor of the government's argument? Well, I'd encourage the Court to look at the dissent in that case of Judge Hartz. I saw that, Judge Hartz, but it was the dissent. Correct. So we'd be creating a circuit split here. That's true. But the Tenth Circuit is really the only circuit that's given any meaningful analysis to this issue. The Eighth Circuit case described by the government didn't engage in meaningful analysis of this issue. And our position is that that case, the Tenth Circuit case, was wrongly decided for the reasons described by Judge Hartz in what I think was a very well-reasoned dissent. And our interpretation is entirely consistent with Malooly, which speaks to looking at the definition in the statute. And the government makes an argument that, in fact, the definition of sexual abuse, sexual abuse of a minor, and the other terms in the first clause are defined. The point, though, is that there's a definition of child pornography within the chapter at hand. That definition at 2256 says that whenever the word child pornography is used in this chapter, this is the definition. So it can't be the case that, in fact, in the context of 2252b2, the definition is broader. You have the words relating to which broaden the conduct, but they don't broaden the definition of child pornography. And I think that's absolutely clear, and it's absolutely clear, clearly consistent with Malooly. And what you hear from the government, and particularly in response to Judge Murguia's question about limits, the government's interpretation has no limits. This is extremely important for the reasons that Judge Murguia identified, which is this is an incredibly harsh consequence. A person, when this law applies to them, gets ten years' mandatory minimum in prison. States around the country define child pornography in widely varying ways, ways that are starkly inconsistent with the federal definition of child pornography. The government asks for examples. Just having done a quick review of these statutes, in Illinois, the criminal statute 11-20.1, which describes child pornography, includes children, but it also covers people with severe or profound intellectual disabilities. We also are looking at statutes and convictions from years past. In Ohio, until 1990, child pornography covered images of minors who are nude and nothing else, nothing about lewd conduct. And so the concern is that unless there is a limit, and that limit being the federal definition of child pornography, any conviction that has any arguable relationship could qualify a person for the ten-year mandatory minimum. And I'm not hearing a limit that has meaning from the government. And that's the concern that the Supreme Court identified in Malooly as well. This is what makes this case, I think, rather challenging. Malooly told us that we have to consider, when we're looking at these kind of issues, the context and the history. And I think the government makes some good points regarding the history in particular. And so I guess I'd just like to hear your best argument for the history supporting your position and a reading of the mandatory minimum statute. We have no quarrel with the point that Congress intended to expand the scope beyond simple categorical analysis across the board. It is true that the legislative history speaks to that. But the legislative history doesn't speak to a desire on the part of Congress to expand the scope to conduct and or to images that don't meet the Federal statutory definition. We don't have legislative history suggesting that, in fact, Congress identified the fact that there are statutes that cover conduct that is potentially violative of the First Amendment protections of defendants that expands well beyond what the Federal understanding is. We don't see Congress saying, we don't care about that. We want a 10-year mandatory minimum to apply to images like that that are broader than the Federal definition. What they did was include the relating to language with respect to conduct to ensure that it covers a wide range of conduct specifically in reference to child pornography that's consistent with the Federal definition. That's and anything more than that really would get into problems of vagueness, which I raised related to the Johnson case. Let me ask you before your time is up, specifically regarding 311.3, I think is what is that statute. I think we received your supplemental briefing on that. I wanted to ask you about the mens rea and the lack of mens rea that you argue is present before that second part of that provision, that statute. There's no knowingly word stated there. But how do we reconcile that with excitement video, which seems to require that we read a mens rea to avoid unconstitutionality? Well, a couple of things. One is that excitement video obviously was a Federal court interpreting a Federal statute. What we're determining here is whether a State court applying this State statute would have applied it as it's written. And there's nothing that we have in the record or in case law suggesting otherwise. And in fact, the government actually admittedly did better than I did at finding unpublished case law on this point. But in fact, the unpublished case, People v. Lyfe, shows my point. At pages 5 and 6, you see their explanation of what is required to be proven under 311.3. There's no indication in there of a requirement of knowledge as to age. And if you look at that opinion, it also describes what's required at 311.11, and it does include that knowledge of age requirement. So ---- Is there any example, I guess, of someone being prosecuted under the statute where there is no mens rea that's been shown, I guess? I mean, is there anything out there? I guess I would say that People v. Lyfe confirms that courts have applied this without requiring a knowledge requirement, knowledge mens rea requirement, because the case itself indicates that that's not among the requirements in the statute. It describes the fact that in that case they were able to establish knowledge, but that was only relevant in that 311.11 was charged in that case as well, which does include that knowledge element. Okay. Thank you. I will be very brief, Your Honor. On the congressional intent point, I just want to draw the Court's attention to something that we focused on in our reply brief, which is that Congress has made extensive findings about the close relationship between sexual abuse and child pornography. There's nothing in the legislative history to suggest that Congress meant to treat the sexual abuse predicates differently from the child pornography predicates. And, in fact, that would be contrary to Congress's clearly expressed intent where they say that child pornography directly leads to sexual abuse, it's a tool used in sexual abuse, and that these two types of offenses are closely linked. Now, on this point that the government's interpretation has no limits, that was the same argument that the Federal public defenders made in Sullivan. They made that in two different amicus briefs, and this Court rejected that argument. So what you're hearing from the defense here, really, I mean, they've tried to say that they're distinguishing Sullivan, but as we said in our reply brief, this is really an effort to relitigate Sullivan. Okay. And this Court has already rejected many of those arguments. Thank you very much. Thank you very much. Thank you. Mr. Lerman and Mr. Schmock, thank you very much for your excellent arguments here today. The matter of United States v. David Wesley Reinhart is now submitted.
judges: Gould, Murguia, Freudenthal